**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

**JAMES COLLINS,**

                         **Plaintiff,**

             **-against-**

**TRAVERS FINE JEWELS INC., et al.,**

                        **Defendants.**
----------------------------------------------------------------X

**16-CV-03780 (SN)**

**OPINION AND ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

Plaintiff James Collins commenced this action on May 20, 2016, asserting breach of contract, breach of express warranty, breach of implied warranty, violations of the New York Uniform Commercial Code, fraudulent misrepresentation, negligence, fraud, unfair and deceptive trade practices, and false advertising claims against defendants Travers Fine Jewels Inc. ("Travers") and Sam Kassin. The defendants counterclaimed seeking return of a sum purportedly owed by the plaintiff and for defamation. The Court has dismissed the defamation counterclaim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

On August 31, 2017, Collins moved for summary judgment on his claims for breach of contract, breach of express warranty, fraudulent misrepresentation, fraud, unfair and deceptive trade practices, and false advertising. Defendants petitioned the Court to postpone the deadline to oppose this motion by two weeks, which the Court granted but cautioned that no further extensions would be granted. On the revised due date, they requested another extension in time to file because defense counsel was unable to contact his clients. The Court denied that request due to its last-minute nature and the Court's earlier admonition regarding additional extension

requests. Instead of an opposition, Defendants filed a sworn affidavit from their counsel with no memorandum of law or Rule 56.1 statement of facts.

## I.      Defendants' Submission

Local Civil Rule 56.1 requires any motion for summary judgment to be accompanied by a statement of facts itemized into numbered paragraphs. Local Civ. R. 56.1(a). The rule provides that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civ. R. 56.1(c). Furthermore, "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible." Local Civ. R. 56.1(d). A party's failure to comply with Local Rule 56.1, therefore, "is grounds for deeming admitted the facts contained in [the opposing party's] Rule 56.1 statement." Prunella v. Carlshire Tenants, Inc., 94 F. Supp. 2d 512, 513 n.1 (S.D.N.Y. 2000). "[D]istrict courts in the Southern and Eastern Districts of New York have interpreted current Local Rule 56.1 to provide that where there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." Holtz v. Rockefeller & Co., 258 F.3d 62, 73–74 (2d Cir. 2001) (quotation omitted). But "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law." Id. at 74.

Federal Rule of Civil Procedure 56(c)(4) requires that an affidavit or declaration filed to support a summary judgment motion to "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Affidavits that do not comply with this requirement may be struck from the

record. Hollander v. Am. Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999). Indeed, "[a]ttorneys' affidavits not based upon personal knowledge have been held not to comply with Rule 56(e) at least since Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc., 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950), a position [the Court of Appeals] has frequently reiterated." Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986); see also Beyah v. Coughlin, 789 F.2d 986, 989 (2d Cir. 1986) (same).

Because Defendants' affidavit fails to comply with Local Civil Rule 56.1's requirements, the facts set forth in Collin's Rule 56.1 statement are deemed admitted for the purpose of this motion. Furthermore, even if the Court looked past the affidavit's procedural deficiencies, because it is riddled with inadmissible hearsay, generalized conclusions, argumentative statements, or statements that are not based on defense counsel's personal knowledge, it would be struck in its entirety. To the extent these portions of the affidavit quote or paraphrase evidence properly before the Court, the Court will consider that evidence separately.

Collins further contends—and Defendants do not contest—that Exhibit B, Exhibit B-1, and Exhibit C to the Lebow Affidavit were not produced in discovery. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Pace v. Air & Liquid Sys. Corp., 171 F. Supp. 3d 254, 265 (S.D.N.Y. 2016) (quoting Fed. R. Civ. P. 37(c)(1)). "The intention of this preclusionary measure is to prevent the practice of 'sandbagging' an opposing party with new evidence, and it applies on motions for summary judgment." Id. (quoting (Hooks v. Forman Holt Eliades & Ravin LLC, No. 11 CIV. 2767 (LAP), 2015 WL 5333513, at *4 (S.D.N.Y. Sept. 14, 2015)). "In determining whether to exclude evidence under this standard, a district court

considers a nonexclusive list of four factors: (i) the party's explanation for its failure to disclose, (ii) the importance of the evidence, (iii) the prejudice suffered by the opposing party, and (iv) the possibility of a continuance." 523 IP LLC v. CureMD.Com, 48 F. Supp. 3d 600, 634 (S.D.N.Y. 2014). "The burden to prove substantial justification or harmlessness rests with the dilatory party." Schiller v. City of New York, Nos. 04 CIV. 7921, 7922 (RJS)(JCF), 2008 WL 4525341, at *3 (S.D.N.Y. Oct. 9, 2008).

Under the first factor, Defendants provide no rationale to explain why they failed to disclose these materials to Collins. Because Collins credibly demonstrates that he repeatedly sought these documents—and that Travers denied they existed—this factor weighs in favor of their exclusion. As to the second factor, the disputed value and price of the jewelry is the focal point of this litigation. These appraisals are therefore plainly important and this factor weighs in favor of their production. Third, the prejudice to Collins is substantial. Collins was unable to ask Defendants about these documents at deposition, potentially depriving him of evidence to support this motion. Indeed, Defendants' use of these documents to controvert otherwise undisputed parts of the record is precisely the sort of sandbagging that Rule 37 is intended to prevent. Pace, 171 F. Supp. 3d at 266. Finally, given defense counsel's inability to contact his clients for the six weeks after this motion was filed, it is unlikely that a continuance would be anything other than another unwarranted delay in these proceedings. Because these factors weigh overwhelmingly in favor of precluding the documents, the Court strikes Exhibits B, B-1, and C from the record.

## II.     Factual Background

Travers is a jewelry store located on the Upper East Side of Manhattan. SMF ¶ 57; Ex. 6. Its owner and proprietor is defendant Sam Kassin. SMF ¶ 58; Ex. 6 (RFA No. 49). From

December 2015 to early 2017, Travers had a window sign advertising that jewelry was being sold for "50% off" to attract customers to the store. SMF ¶ 6, Travers Dep. 55-57. Collins saw this sign each time he visited the store. SMF ¶ 11, Collins Dep. 9:4-19, 71:8-22. On December 15, 2015, Collins paid Travers approximately $92,400 for jewelry. SMF ¶ 12, Ex. A, Travers Dep. 217:8-17, Kassin Dep. 34:13-20. The following February, Collins returned at least one of these pieces of jewelry. SMF ¶ 14, Travers Dep. 70:14-73:12. That same month, Collins purchased additional jewelry from Travers, spending $261,000. SMF ¶ 15, Exhibit B, Travers Dep. 218:6-18. Collins paid Travers in full for each of these purchases. SMF ¶¶ 13, 16, Exhibit B; Travers Dep. 217:8-17, 218:6-18; Kassin Dep. 34:13-20; Collins Dep. 10:50-9. Travers provided Collins a document listing the retail prices for each piece of jewelry. SMF ¶ 18, Ex. 6 (RFA No. 7). Travers also told Collins that each item of jewelry retailed at a given price. SMF ¶¶ 20, 21, 25, 26, 27, 31, 35, 38; Ex. C; Ex. 6 (RFA No. 10, 12, 17, 21, 24, 27); Travers Dep. 136:2-18, 212:20-22. It was reasonable for Collins to rely on the defendants' assertions concerning the jewelry. SMF ¶¶ 64-65, Ex. 6 (RFA Nos. 53-54), Travers Dep. 248:20-250:8.

Travers and Kassin do not examine their jewelry to ascertain whether there have been color or clarity enhancements. SMF ¶ 46; Travers Dep. 139:14-19, 213:2-13. They did not know what a Yehuda treatment was until February 2016, when Collins's appraiser explained it to them. SMF ¶ 45; Travers Dep. 137:11-24. Neither made any disclosures to Collins regarding any treatments to the jewelry. SMF ¶ 47; Travers Dep. 69:15-70:12, 82:24-83:14, RFA No. 31. Kassin told Collins that Collins was buying the jewelry from Travers at a discount of approximately 50% off the retail price. SMF ¶ 48, Ex. 6 (RFA No. 32). This retail price is

determined by Travers or Kassin. SMF ¶ 49; Travers Dep. 64:4-10. Retail replacement value is the retail cost to replace an item. SMF ¶ 50; Travers Dep. 97:19-23; Woolford Decl. ¶ 9.

## III.    Analysis

### A.    Summary Judgment

"For the court to grant summary judgment, the movant must 'show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113 (2d Cir. 2017). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, a court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

### A.    Breach of Contract

Under New York law, "[t]o establish a prima facie case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank, 392 F.3d 520,

525 (2d Cir. 2004).[1] Where a plaintiff contends there is breach, he "must identify what provisions of the contract were breached as a result of the acts at issue." Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) (quotations omitted). "[T]he initial interpretation of a contract is a matter of law for the court to decide." K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996). "Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, England, 136 F.3d 82, 86 (2d Cir. 1998). "An ambiguity exists where the terms of a contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" Id. (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997)).

The parties agree that a contract exists: they exchanged money for jewelry. Collins argues that a term of this contract was that the jewelry was discounted to 50% off the "retail price." This term was then breached, Collins alleges, because the actual retail value of the jewelry is far below the price claimed by the Defendants. The record is plain that Defendants told Collins that these items had a certain retail price, see, e.g., SMF ¶¶ 35, 38, including in a written receipt. SMF ¶ 18. The Court remains unconvinced, however, that this representation suffices to incorporate the term into the contract. More likely is that the parties agreed to a simple exchange

---

[1] Because the case is brought under diversity jurisdiction, state substantive law governs. DeWeerth v. Baldinger, 38 F.3d 1266, 1272 (2d Cir. 1994). The relevant facts happened in New York, so its law applies.

of promises to trade a specific piece of jewelry for a specific sum of money. Under this contract, there was no breach.

But even assuming that the parties agreed that the jewelry would be sold at a discount to the "retail price," the term remains undefined in the record. Collins argues that "retail price" means the "replacement retail value," citing the expert report of Master Gemologist Appraiser Christina Woolford. As an initial matter, because Ms. Woolford is "not alleged to have been involved in the drafting or negotiation of the [contract, her] post hoc explanation of [her] subjective understanding of the [contract's] terms 'may not be considered on a motion for summary judgment.'" RJ Capital, S.A. v. Lexington Capital Funding III, Ltd., No. 10 CIV. 0025 (PGG), 2013 WL 1294515, at *12 (S.D.N.Y. Mar. 30, 2013) (quoting Faulkner v. Nat'l Geographic Soc., 452 F. Supp. 2d 369, 379 (S.D.N.Y. 2006)).

Further, there is no indication in the record that Collins understood retail price to mean the retail replacement value of the piece. Instead, a more likely explanation is that the term refers to the price at which Defendants previously marketed the item. Indeed, in this context, a piece of jewelry's retail *value*—i.e., the figure at which it is sold on average—is not necessarily its actual retail *price*. A jeweler may elect to sell an item at any price he wants and a buyer may choose to pay more than the typical price for a piece of jewelry if he wants to (because, for example, he especially appreciated the aesthetic of a particular piece, or because he chooses not to educate himself on its worth). Indeed, it is uncontroverted that Defendants set the retail price for their jewelry as they saw fit. SMF ¶ 49.

Collins's argument that the jewelry's retail replacement value should govern the ambiguous contract term raises more fundamental concerns. Collins essentially uses the appraisal to argue that he should have paid a lower price. But the law provides no recourse for buyer's

remorse. Collins urges the Court to adopt a *post hoc* definition of this term, but this would improperly substitute a third-party's understanding for "the intention of the parties at the time they entered into the contract." Evans v. Famous Music Corp., 1 N.Y.3d 452, 458 (2004).

Because Collins presents no evidence to suggest that the term retail price is part of the contract or that the parties agreed on a different meaning of the term "retail price," summary judgment is DENIED with respect to Collins's breach of contract claim and judgment is entered in favor of the defendants.

### B.    Breach of Express Warranty

"The U.C.C. provides that '[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.'" Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 289 (S.D.N.Y. 2014) (quoting N.Y.U.C.C. § 2–313(1)(a)). To show there was a breach of warranty the "plaintiff must allege that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." DiBartolo v. Abbott Labs., 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012) (internal quotations omitted).

Collins alleges that the Defendants breached an express warranty that the jewelry would be sold at a discount off the retail price. This presents the same issue as above. The term retail price was not part of the contract, and moreover, it is ambiguous. For these reasons, Collins's motion is DENIED with respect to his claim for breach of express warranty and judgment is entered in favor of the defendants.

## C. Fraudulent Misrepresentation and Fraud

"In a claim for intentional or fraudulent misrepresentation in New York, 'a plaintiff must allege a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.'" Greene v. Gerber Prod. Co., 262 F. Supp. 3d 38, 73 (E.D.N.Y. 2017) (quoting Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 178 (2011)). Collins contends that Defendants misrepresented the retail price of the goods. For the same reasons described above, this is an insufficient grounds upon which to make out a claim for fraudulent misrepresentation. There is no evidence that Defendants misrepresented the jewelry's retail price.

But Collins further points out that many of the jewels were altered, triggering disclosure requirements under federal, state, and local law. Failure to comply with these requirements, he contends, constitutes a material omission. The Federal Trade Commission has promulgated a regulation explaining that it is "unfair or deceptive to fail to disclose that a gemstone has been treated if . . . the treatment has a significant effect on the stone's value." 16 C.F.R. § 23.22(c), see also Ferreira v. Sterling Jewelers, Inc., 130 F. Supp. 3d 471, 477 (D. Mass. 2015) (holding that failure to disclose jewel enhancements under 16 C.F.R. § 23.22 was an unfair trade practice under Massachusetts law). New York state law makes it a misdemeanor "to knowingly sell or offer for sale any diamond which shall have been artificially colored or tinted by coating, irradiating, heating, nuclear bombardment or by any other means, without disclosing in writing to the purchaser, or prospective purchaser, that such diamond has been artificially colored or tinted, or without disclosing in writing that the artificial coloring or tinting of such diamond is not permanent." N.Y. Gen. Bus. Law § 229-j. New York City consumer protection rules provide

that a "seller may not mislead the consumer about any characteristic of the jewelry, including its type, kind, name, grade, quality, quantity, size, weight, cut, color, character, substance, durability, origin, prior ownership, price or value." 6 N.Y.C.R. § 5-47. These rules oblige a jewelry seller to disclose to a buyer that the jewelry has been altered. A failure to disclose this information is the kind of material omission upon which a buyer like Collins could plausibly rely.

But in addition to showing a material omission, to make out a fraud claim, Collins must prove scienter. Collins claims that Defendants intended to sell fraudulent items because (1) they failed to keep sales records and (2) they failed to make the relevant disclosures under the above statutes. The mere failure to maintain sales records is not sufficient to demonstrate fraudulent intent. Failing to disclose that some of the jewels had been enhanced, however, may be. But during his deposition the Travers corporate designee testified that he did not know that many of the jewels had been treated, and did not even know about one of the enhancements. SMF ¶ 45. If the Defendants did not know the jewels were treated, then they cannot have knowingly omitted the relevant information. Due to lack of proof of Defendants' scienter, Collins's motion for summary judgment for his fraudulent misrepresentation and fraud claims is DENIED.

### D.     Unfair and Deceptive Trade Practices and False Advertising

To make out a claim for unfair and deceptive trade practices under New York General Business Law 349 or 350, "a plaintiff must allege that the defendant (1) engaged in consumer-oriented conduct; (2) that the conduct was materially misleading; and (3) that the plaintiff suffered injury as a result of the allegedly deceptive act or practice." Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015). The standard governing both sections is largely coextensive. Gristede's Foods, Inc. v. Unkechauge Nation, 532 F. Supp. 2d 439, 450–51

(E.D.N.Y. 2007). Consumer-oriented conduct means that "the deceptive act or practice may not be limited to just the parties." <u>Nungesser v. Columbia Univ.</u>, 244 F. Supp. 3d 345, 377 (S.D.N.Y. 2017) (quoting <u>Teller v. Bill Hayes, Ltd.</u>, 630 N.Y.S.2d 769, 772 (2d Dep't 1995)). Unlike with fraud claims, "it is not necessary under the statute that a plaintiff establish the defendant's intent to defraud or mislead." <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.</u>, 85 N.Y.2d 20, 26 (N.Y. 1995).

First, defendants were in the business of selling jewelry to the public. This is consumer-facing, and the conduct at issue falls under the umbrella of their general sales practices. Second, their failure to disclose that many of the jewels that they sold were altered was materially misleading because it violated the federal, state, and local rules that place a duty on jewelers to disclose alterations to their gems. And while Defendants' conduct may not have been willful, willfulness is not required under the rule. Finally, Collins plainly suffered an injury as a result because the jewelry he obtained is worth far less than he originally thought it would be as a direct result of it being altered. Collins's motion for summary judgment on these two claims is GRANTED for the altered jewelry listed in items 1, 2, 5, and 7 of the Woolford Appraisal. Woodford Decl. ¶ 16.[2]

### F.    Defendants' Counterclaim

Defendants present no evidence to substantiate their counterclaim for $40,258.17. Collins's motion for summary judgment with respect to the counterclaim is GRANTED.

---

[2] Ms. Woolford did not take the clarity enhancements of item #4 (emeralds) and #8 (low quality diamonds) into account when appraising these items' retail replacement value because the enhancements did not affect their value.

**IV.    Conclusion**

Plaintiff's motion is GRANTED in part and DENIED in part.

The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 79.

A conference to set a date for final pre-trial filings and trial is scheduled for Friday, April 13, 2018, at 3:00 p.m., in Courtroom 219, 40 Foley Square, New York, New York. If either party is not available on that date, they must contact Courtroom Deputy Joseph Mendieta immediately at (212) 805-0286.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:    March 22, 2018
          New York, New York